# Order

**Michigan Supreme Court**
**Lansing, Michigan**

May 3, 2013

146595 & (3)

Robert P. Young, Jr.,
Chief Justice

Michael F. Cavanagh
Stephen J. Markman
Mary Beth Kelly
Brian K. Zahra
Bridget M. McCormack
David F. Viviano,
Justices

IN RE REQUEST FOR ADVISORY OPINION
REGARDING CONSTITUTIONALITY OF
2012 PA 348 and 2012 PA 349                                SC:  146595

_____/

On order of the Court, the motion for leave to file brief amicus curiae is GRANTED.  The request by the Governor for an advisory opinion on the constitutionality of 2012 PA 348 and 2012 PA 349 is considered.  We invite the Michigan Solicitor General to file a brief in this case within 35 days from the date of this order expressing the views of the state of Michigan as to whether this Court should grant the Governor's request for an advisory opinion.  Specifically, we ask the Solicitor General to address:  (1) why prompt resolution of the constitutional question regarding application to the Civil Service Commission is necessary to guide the State Employer in its fall contract negotiations with civil service employees; (2) why this matter warrants this Court's present intervention when § 14(4) of 2012 PA 348 and § 10(6) of 2012 PA 349 explicitly grant "exclusive original jurisdiction over any action challenging the validity of [the pertinent subsections]" in the Court of Appeals, which "shall hear the action in an expedited manner;" (3) given that there are adversarial proceedings already pending in several courts, and in light of the non-precedential nature of an advisory opinion, see *Anway v Grand Rapids R Co*, 211 Mich 592, 603 (1920); *Advisory Opinion re Constitutionality of 1972 PA 294*, 389 Mich 441, 460 n 1 (1973), how this Court's intervention in the absence of an actual case and controversy would necessarily aid in resolution of the issues presented rather than produce confusion and delay; and (4) the value of an advisory opinion from this Court addressing federal equal protection issues since federal courts are not bound by state court determinations on federal constitutional issues, see *Woods v Holy Cross Hosp*, 591 F2d 1164, 1171-1172 (CA 5, 1979).

The request by the Governor for an advisory opinion remains pending.

CAVANAGH, J. (*dissenting*).

I do not join the majority's decision to invite the Solicitor General to file a brief in this matter.  I believe that this Court is well equipped to decide whether, under the circumstances, it would be an appropriate exercise of discretion to grant the Governor's request for an advisory opinion without inviting comment from the Solicitor General regarding the "views of the state of Michigan."  Because the Governor's request remains pending, I do not believe that the majority's order should in any way affect pending adversarial proceedings, including those that are to be heard in an expedited manner.

MARKMAN, J. (*dissenting*).

I would grant without further delay the Governor's request, submitted on January 28, 2013, for an advisory opinion addressing the constitutionality of specific provisions of Public Acts 348 and 349 of 2012 (the "right-to-work" laws) and therefore respectfully dissent. In my judgment, (1) the request for such an advisory opinion constitutes a reasonable exercise of the constitutional authority of the chief executive of this state; (2) the issuance of an advisory opinion would constitute a reasonable exercise of the constitutional authority of this Court; (3) an advisory opinion would affirm this Court's role as the ultimate arbiter of Michigan law; (4) an advisory opinion would, if the right-to-work laws are ultimately determined to be constitutional, facilitate their orderly implementation; (5) an advisory opinion would minimize the possibility of protracted litigation concerning the validity of the right-to-work laws; and (6) an advisory opinion would demonstrate comity by this Court with a coordinate branch of state government.

The Michigan Constitution states:

> Either house of the legislature or the governor may request the opinion of the supreme court on important questions of law upon solemn occasions as to the constitutionality of legislation after it has been enacted into law but before its effective date. [Const 1963, art 3, § 8.]

Considering that this Court possesses this authority, it is difficult to imagine an instance in which its exercise would be more necessary and proper than in the present case. The right-to-work laws, proponents and opponents agree, will have a substantial effect upon both employees and employers, public and private, and upon the economy, throughout this state, and these statutes have been the subject of substantial legal dispute and controversy.

If there is an obvious purpose behind the advisory opinion clause of the Constitution, it is to facilitate the resolution of legal disputes of precisely the sort raised by this case. The Governor has sought to expedite the process by which a bill becomes a law and a law becomes genuine public policy. I would accommodate without further delay his request for an advisory opinion not because this is or should be a *compliant* court, but because it is and should be a *responsible* court, ensuring that the constitutional processes of government are respected and that the people's will, as expressed both in the laws enacted by their representatives and in their constitutions, is faithfully upheld. The Governor's request constitutes a rational response to a judicial culture in which the decision-making of courts has been extended into an increasingly broad array of public policy areas. By granting his request, this Court would expedite the process of judicial review, and thereby expedite the process by which some measure of certainty can be brought to laws having a broad and significant economic effect upon this state.

The Governor asserts in his letter seeking an advisory opinion that the state's current collective-bargaining agreements expire on December 31, 2013, that negotiations regarding new contracts will likely begin this summer, and that, in his judgment, it is imperative for the negotiating parties to "know definitively whether the new contracts must comply with Public Act 349 before those negotiations commence . . . ." Though the Governor speaks only to the effects of uncertainty on the public sector, the impact on the private sector will likely be equally significant considering that Michigan is one of the most heavily unionized states in the country. Thus, whatever the ultimate decision of this Court concerning the constitutionality of the right-to-work laws, I would act in response to the Governor's exercise of his constitutional authority, and in the exercise of this Court's own authority, to promote certainty and clarity with regard to these laws. This undoubtedly is one of those "solemn occasions" contemplated by our Constitution for invocation of the advisory opinion process.

Additionally, the provisions of the right-to-work laws granting the Court of Appeals exclusive original jurisdiction over actions challenging the validity of certain core provisions of the laws (vis-à-vis our trial courts, *not* this Court, compare Const 1963, art 6, § 13 with Const 1963, art 3, § 8) have utterly no effect upon the prerogative of this Court to issue advisory opinions. To the contrary, I see these provisions as further evidence of the importance and time-sensitivity of the issues surrounding the implementation and administration of these laws, and of the Legislature's and the Governor's desire to reduce to the extent possible levels of uncertainty in these regards. Through the advisory-opinion process, the Governor can ensure that the issues with which *he* is concerned can be considered with expedition by this Court, as opposed to the issues with which *private litigants* are concerned being considered by the Court of Appeals and subject to further layers of appeal.

It also appears that all four issues raised by the Governor pose relatively abstract questions of law that this Court would readily be able to address without the development of a factual record in the lower courts. While the usual prerequisite for this Court's exercise of jurisdiction is the presence of an actual case or controversy, the advisory opinion clause of our Constitution establishes an exception to this requirement, and the questions posed in the Governor's request are questions that are readily susceptible to resolution by this Court absent a specific case or controversy.

Perhaps most importantly, the Governor's request must be viewed against the backdrop of a policy-making process of which it has become an increasingly ubiquitous and routine part that controversial pieces of legislation, such as the right-to-work laws, must, following legislative and executive approval, now make a third stop—at the judiciary—before they are viewed as fully legitimate and enforceable public policies. The advisory opinion enables this Court, at the request of either the executive or the legislative branches, to promptly resolve a dispute that otherwise might languish within the judiciary. In this regard, two recent illustrations come to mind of what increasingly

occurs when controversial legislation morphs into litigation, in both instances arising within the federal judiciary: an abortion statute enacted by our state Legislature enjoined for more than five years and a constitutional amendment enacted by a vote of the people barring race-based affirmative action now delayed for what has been in excess of seven years. If we must suffer 'government by judiciary,' at least let this be done with expedition. It is understandable that the Governor might be concerned about a similar fate befalling the right-to-work laws, and he and the people of this state are entitled to a resolution of the laws' constitutionality at some point before their enactment has become a distant and dim memory.

Further militating in favor of a response to the request for an advisory opinion is that the Michigan Constitution's system of separated powers not only requires that each branch of state government in its relationship with the others assert and defend its prerogatives when necessary, but compels that each also demonstrate comity with the others whenever possible. It is not as if requests for advisory opinions have been made frequently or frivolously by the Governor or the Legislature, as it appears that the present request is only the fifth this Court has received over the past decade. On the rare occasions on which requests *are* made, this Court should act reasonably to accommodate them. Demonstrating respect for the other branches of government burnishes the reputations of both this Court and state government as a whole. For similar reasons, I have previously favored accommodating reasonable requests for advisory opinions by both the Governor and the Legislature and for answers to certified questions sought by the federal judiciary.

All additional delays aside, I am separately troubled by the Court's unprecedented action in requesting that the Solicitor General weigh into the advisory-opinion process at this stage. Our constitution invests the *Governor* with the authority to seek an advisory opinion, and it invests *this Court* with the authority to grant (or to not grant) such a request. As much as I have long held in high regard the Office of the Solicitor General (and the Office of the Attorney General under whose auspices the Solicitor General carries out its duties), I would not introduce a second office of the executive branch to opine upon the merits of the exercise of authority by another office of that branch. The question now before this Court does not pertain to the substantive merits of the issues presented by the Governor, but only whether these should be addressed and answered by this Court. If this Court ultimately grants the request for an advisory opinion, the Office

of the Solicitor General is well situated to represent either, or perhaps both, sides in addressing the legal merits of the questions posed; however, it has no special standing, nor any constitutional status, as does the Governor, to assert that the circumstances of this state pose a sufficiently "solemn occasion" as to which this Court's advisory opinion authority should be exercised. Rather, the advisory opinion process at this stage is best understood to operate in reliance upon the *Governor's* judgment and *this Court's* assessment of that judgment alone.

Finally, I am persuaded that the Governor's request for an advisory opinion should be granted without further delay on the basis of the following considerations: (1) multiple lawsuits, brought by both supporters and opponents of the right-to-work laws, and by both public and private parties, are pending in federal court, state circuit courts, and the Court of Appeals; by postponing a decision on the present request, only this Court—the one judicial body directly responsible to the people of this state as their court of last resort in construing Michigan laws—will be uninvolved at this critical juncture in addressing the legal merits of the newly enacted right-to-work laws; (2) delays in the implementation of these laws have seemingly emerged as a strategy or tactic on the part of some opponents of the right-to-work laws; on behalf of himself and the representative majority in this state, the Governor is entitled to resist such strategies and tactics and this Court need not be oblivious to what is transpiring in assessing the merits of an advisory opinion; and (3) federal courts have increasingly undertaken to decide issues that were once viewed as coming within the primary purview of the state judiciary, and this Court acts properly to protect its prerogatives to the best of its ability by addressing matters involving Michigan law. There is little doubt in my mind that by our not acting promptly in addressing the issues raised by the Governor, federal courts will in quick order fill this vacuum—to the detriment of both this Court and the people who elect its justices, and to the detriment of traditional constitutional principles of judicial federalism.

For these reasons, I would grant, without further delay, the Governor's request for an advisory opinion on the constitutionality of the right-to-work laws, and I would promptly schedule oral arguments in this regard. The issues raised here are those that should be addressed at this time by the highest court of this state.



I, Corbin R. Davis, Clerk of the Michigan Supreme Court, certify that the foregoing is a true and complete copy of the order entered at the direction of the Court.

May 3, 2013

_____
Clerk

s0430